JAMES THOMPSON, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Court of Appeals, June 26, 1888.*

Reversing same case, 33 Hun, 16.

1. *Negligence.    Railroad Crossing*—One who approaches a railroad cross-ing, must, before crossing, look both ways, when looking will do any good, and must cross only when he perceives that it can be done without danger of coming in collision with a train then within sight or hearing. There is no special distance within which this looking must be done, but each case must necessarily depend largely upon its own facts.

2. *Same.*—A failure for a second or two to look a third time up the track does not necessarily make a driver of a team at a crossing guilty of negligence as a legal proposition, and render it proper to take this question from the jury.

3. *Same.    Signals*—The giving of the signals required by law does not, under all circumstances, render the company free from negligence, if it runs its train at an undue, and what may be found to be, an improper and highly dangerous rate of speed through a village or city more or less densely populated.

Action to recover damages for alleged negligence, causing the death of plaintiff's team of horses, at a street crossing on defendant's road.

Appeal from a judgment of the general term of the su-preme court, affirming a judgment in favor of defendant, entered upon an order nonsuiting the plaintiff.

*Nelson J. Waterbury*, for appellant.

*Frank Loomis*, for respondent.

PECKHAM, J.—The nonsuit in this case should be set aside and a new trial granted. Upon the facts as developed in the evidence on the part of the plaintiff there was a

question of fact which should have been submitted to the jury.

The evidence of the driver of the horses is that he looked up and down the track when he came within a hundred feet of it, and saw nothing to prevent his crossing in safety. When within sixty feet he looked again, both ways, to the north and to the south, and still saw nothing. Approaching somewhat nearer the track he for a third time looked to the south and saw nothing, and was in the act for the third time of looking to the north when his attention was for a moment diverted towards a boy in front of his horses, and as he says in one portion of his evidence, the boy was on the track on the east, as he was approaching or on the west track, and when he first saw him the boy was perhaps twenty feet off but moving recklessly towards him. His attention was thus momentarily diverted from looking to the north for the third time, and his horses' heads were but four feet from the west track, when he heard the whistle of the engine and looked and saw a train coming from the north 300 or 400 feet distant. His horses were in motion and so near the track that he could not stop them, although going very slowly, scarcely off a walk, until they got onto the down track; and before he could get them off the engine struck them and they were instantly killed. In all this we do not see that the plaintiff's driver was as matter of law guilty of negligence.

One who approaches a railroad crossing must exercise due care and caution. He must before crossing look, when looking will do any good, both ways, and must cross only when he perceives that it can be done without danger in coming in collision with a train then in sight or within hearing. There is no special distance at which this looking must be done, but each case must necessarily depend largely upon its own facts. Here the plaintiff's driver looked twice up and down the track before attempting the crossing, once at a distance of a hundred and once at sixty feet from

the tracks, and had looked a third time to the south and was about looking a third time to the north when his attention was taken up for a moment by the sight of the boy. It cannot be that a failure for a second or two to look a third time up the track made him guilty of negligence as a legal proposition and rendered it proper to take that question from the jury.

It is said the defendants were not guilty of any negligence, as there was no proof of a failure to ring a bell or blow a whistle within the statutory distance.

The accident happened near the Tremont station, in Westchester county, but it is apparent from the whole evidence that it was at a crossing made by a public street, and that it was in a tolerably thickly populated part of the country, and it might well be a question for the jury whether the defendants were or were not upon all the facts guilty of negligence in running their train at a very great speed claimed on the part of the plaintiff through such a portion of the country.

The giving of the signals required by law does not, under all circumstances, render the defendants free from negligence, if they ran their train at an undue and what might be found to be an improper and highly dangerous rate of speed through the village or city more or less densely populated.

Both questions as to the negligence of plaintiff's driver and as to that of the servants of defendants, should have been submitted to the jury; and for the error in refusing such submission, the judgment should be reversed and a new trial granted, costs to abide the event.

All concur.